**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KYLE ELLISON**                                             **CIVIL ACTION**

**VERSUS**                                                       **NO. 23-1849**

**MARQUETTE TRANSPORTATION COMPANY**          **SECTION: "G"(3)**
**GULF-INLAND, LLC**

## <u>ORDER AND REASONS</u>

In this litigation, Plaintiff Kyle Ellison ("Plaintiff") brings claims against Defendant Marquette Transportation Company Gulf-Inland, LLC ("Defendant") under the Jones Act and general maritime law.[1] Plaintiff alleges that Plaintiff was a member of the M/V ST. PEREGRINE's crew when a collision occurred between two barges while the M/V ST. PEREGRINE was building tow.[2] As a result of this collision, Plaintiff alleges he suffered injuries to his left leg and lower back.[3] Pending before the Court is Defendant's Motion for Summary Judgment.[4] Plaintiff opposes the motion.[5] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 1.

[2] *See, e.g.,* Rec. Doc. 24 at 1.

[3] *Id.*

[4] Rec. Doc. 21.

[5] Rec. Doc. 24.

## I. Background

Plaintiff avers that he was a deckhand and member of the crew of the M/V ST. PEREGRINE when a collision occurred while the M/V ST. PEREGRINE building tow on June 5, 2020.[6] Plaintiff claims they injured their left leg and lower back in the collision.[7] On June 5, 2020, the M/V ST. PEREGRINE was captained by Captain Landry who operated the vessel with deckhands Brandon Morgan ("Morgan") and Plaintiff Kyle Ellison.[8] Harvey Marbile was the port captain.[9]

On July 9, 2024, Defendant filed the instant motion for summary judgment.[10] On July 16, 2024, Plaintiff opposed the motion.[11] On July 19, 2024, Defendant filed a reply brief.[12]

## II. Parties' Arguments

### A.   *Defendants' Arguments in Support of the Motion for Partial Summary Judgment on Jones Act Negligence and Unseaworthiness*

Defendant claims that Plaintiff cannot establish that Defendant was negligent.[13] Defendant maintains that a Jones Act employer "can only be held liable if the seaman establishes by a preponderance of the evidence that the negligence of the employer, or one for whom the employer

---

[6] Rec. Doc. 24 at 1.

[7] *Id.*

[8] *Id.* at 6.

[9] *Id.*

[10] Rec. Doc. 21.

[11] Rec. Doc. 24.

[12] Rec. Doc. 30.

[13] Rec. Doc. 21-1 at 9.

is responsible, played a part in actually bringing about or causing the injury he sustained."[14] As a Jones Act employer, Defendant submits it is not obligated to provide an accident-free workplace, but only to exercise reasonable care for the safety of its employees.[15] "Absent evidence of an unsafe condition or an improper work method, a Jones Act employer cannot be held liable for a seaman's injuries."[16] Additionally, Defendant argues that a seaman is "required to act with ordinary prudence under the circumstances," and that a reasonable seaman in similar circumstances including similar training and experience is the measuring stick.[17] Defendant avers that Plaintiff must present "some evidence that an unsafe condition, unreasonable risk of harm, or improper work method existed…"[18]

Defendant argues that Plaintiff was trained in how to watch the "bump" and knew that a bump was about to occur.[19] Further, Defendant contends that a fellow coworker, Morgan, properly braced himself for the same bump and did not suffer any injuries.[20] Defendant avers that the fact Morgan properly braced himself for the bump demonstrates there existed a safe method to accomplish the work and no unreasonable risk of harm or unsafe condition existed.[21]

---

[14] *Id.*

[15] *Id.*

[16] *Id.* at 10.

[17] *Id.*

[18] *Id* at 11.

[19] *Id.*

[20] *Id.*

[21] *Id.*

Defendant further contends it had no duty to instruct Plaintiff on matters of common sense and what Plaintiff knew or should have known.[22] Defendant points to the fact Plaintiff testified he knew to watch for the bump and knew it was coming.[23]

On the allegation of unseaworthiness, Defendant maintains that Plaintiff cannot meet his burden.[24] To succeed on a claim of unseaworthiness, Defendant argues "the injured seaman must prove that the vessel owner failed to provide a vessel which is reasonably fit and safe for the purpose for which it is to be used."[25] The seaman must further show that the causation of the seaman's injury was caused, at least in substantial part, by the unseaworthy condition on the vessel.[26] Defendant argues that Plaintiff's single allegation of operational negligence on behalf of Captain Landry in coming in too fast during the tow build process cannot establish a claim of unseaworthiness.[27] Defendant claims that isolated instances of negligence on an otherwise seaworthy vessel do not render the vessel unseaworthy, and in this case, Plaintiff describes nothing more than an isolated instance of negligence.[28]

---

[22] *Id.*

[23] *Id.*

[24] *Id.* at 14.

[25] *Id.*

[26] *Id.*

[27] *Id.* at 15.

[28] *Id.*

4

**B.**    ***Plaintiff's Arguments in Opposition to the Motion for Summary Judgment***

Plaintiff maintains that if the employer's negligence "played any part, even the slightest, in producing the seaman's injury, then the employer is liable under the Jones Act."[29] Plaintiff argues, while a seaman must act with ordinary prudence, a seaman's own negligence does not bar recovery under the Jones Act, but is an affirmative defense that can serve to diminish recovery in proportion to the seaman's fault.[30] In this case, Plaintiff avers that Defendant did not follow its own policies and procedures designed to prevent accidents and injuries during the process of building tow, which includes bumps like the one at issue.[31]

Plaintiff argues that Defendant's own procedure, called the "Watch the Bump" rule, required deckhands to warn other deckhands of an impending bump by deckhands with knowledge the bump is about to occur yelling to warn those who are not aware.[32] Plaintiff points out Morgan and Captain Landry, both on the vessel at the time of the bump, failed to yell out to warn Plaintiff of the upcoming bump.[33] Plaintiff further alleges that Captain Landry had a "reputation for coming in too hot while building tow resulting in harder than normal collisions between the barge and tow creating an unreasonable risk of harm to deckhands like [Plaintiff]."[34] Plaintiff claims this is exactly what occurred in the accident on June 5, 2020 that led to Plaintiff's injuries.[35]

---

[29] Rec. Doc 24 at 15 (quoting *Gowdy v. Marine Spill Response Corp.* 925 F.3d 200, 205 (5th Cir. 1982) (internal citations and quotation marks omitted)).

[30] Rec. Doc. 24 at 15.

[31] *Id.*

[32] *Id.* at 16.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 17.

As far as the unseaworthiness claim, Plaintiff asserts that to establish a claim for unseaworthiness, "the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is used."[36] If a Plaintiff can prove a crew is ill-trained, understaffed, or engaged in an unsafe work method, Plaintiff claims the vessel can be deemed unseaworthy.[37] Plaintiff admits that unseaworthiness cannot be established by an isolated act of negligence.[38] However, Plaintiff claims the crew of the M/V ST. PEREGRINE were "unfit, ill-trained, and engaged in unsafe work methods."[39] Among other things, Plaintiff claims that Captain Landry overworked deckhands, took many risks, made dangerous maneuvers with the vessel, and frequently came in too fast while building tow causing the vessel to slam into other barges.[40] Plaintiff asserts these conditions existed for months before the June 5, 2020 accident that caused Plaintiff's injuries.[41]

## C.    *Defendant's Arguments in Reply*

In Reply, Defendant asserts that it is undisputed Plaintiff was trained to watch the bump and that Plaintiff knew a bump was about to occur.[42] Defendant maintains "[t]his is a simple case of a deckhand failing to brace himself for a barge bump he knew was about to occur."[43] Defendant

---

[36] *Id.* at 18.

[37] *Id.*

[38] *Id.*

[39] *Id.* at 19.

[40] *Id.* at 19–20.

[41] *Id.* at 21.

[42] Rec. Doc. 30 at 1.

[43] *Id.*

further alleges that any prior instances involving Captain Landry coming in "too hot" before a bump have no relevance to the case or the incident on June 5, 2020.[44] Defendant claims that the Affidavit of Andrew Riggins ("Riggins"), which Plaintiff offers in support of its Opposition, is "rife with inadmissible hearsay statements."[45]

As for Plaintiff's unseaworthiness claim, Defendant claims Plaintiff has failed to create a genuine dispute of material fact that the M/V ST. PEREGRINE was unseaworthy and that the alleged unseaworthiness played a substantial part in causing the injury.[46] Defendant alleges Plaintiff has failed to prove that the alleged prior bumps were similar to the one Plaintiff claims happened on June 5, 2020, and that even if there were hard bumps in the past, that does not lead to the conclusion the vessel was unseaworthy.[47] Defendant avers that Riggins' testimony does not paint the vessel as unseaworthy.[48] Lastly, Defendant alleges that no action or inaction on Morgan's part led to Plaintiff's injury.[49]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[50] To decide whether a genuine dispute as to any material fact exists, the court

---

[44] *Id.* at 2-3.

[45] *Id.* at 4.

[46] *Id.* at 5.

[47] *Id.*

[48] *Id.* at 6.

[49] *Id.*

[50] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[51] All reasonable inferences are drawn in favor of the nonmoving party.[52] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[53] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[54] The nonmoving party may not rest upon the pleadings.[55] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[56]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[57] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the

---

[51] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[52] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000))

[53] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[54] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[55] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[56] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[57] *Celotex*, 477 U.S. at 323.

opponent's claim or defense."[58] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[59] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[60]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[61] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[62]

## IV. Analysis

Defendant moves for summary judgment on Plaintiff's claim under the Jones Act and for unseaworthiness under general maritime law. The Court addresses each in turn.

### A.    *Jones Act Claim*

A Jones Act employer is required to exercise "ordinary prudence under the circumstances,"[63] to maintain a "reasonably safe work environment."[64] "In order to prevail in a claim for negligence, the plaintiff must present some evidence from which the fact finder can infer

---

[58] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[59] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[60] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[61] *Little*, 37 F.3d at 1075 (internal citations omitted).

[62] *Morris*, 144 F.3d at 380.

[63] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997) (en banc).

[64] *Ober v. Penrod Drilling Co.*, 726 F.2d 1035, 1037 (5th Cir. 1984) (per curiam).

that an unsafe condition existed and that the vessel owner either knew, or in the exercise of due care should have known, of the condition."[65] While the Jones Act employer's duty to provide a reasonably safe place to work is broad in scope, it is not a form of strict liability.[66] "[T]he employer must have notice and the opportunity to correct an unsafe condition before liability attaches."[67] Under the Jones Act, "an employer is liable for the negligence of his employees."[68] The Act "contains a liberal causation requirement."[69] "If the defendant's negligence played any part, however small, in producing the seaman's injury, it results in liability."[70] Furthermore, "entirely circumstantial evidence can prove a Jones Act claim."[71] This standard is "slight, well below the common-law standard."[72]

In this case, there is a genuine dispute of material fact as to whether negligence of Defendant's employees "played any part, however small, in producing [Plaintiff's] injury…"[73] Defendant argues that Plaintiff was trained on how to watch the bump and that he knew the bump

---

[65] *Martinez v. Offshore Specialty Fabricators, Inc.*, 481 Fed. App'x 942, 945 (5th Cir. 2012) (citing *Perry v. Morgan Guar. Tr. Co. of N.Y.*, 528 F.2d 1378, 1379 (5th Cir. 1976)).

[66] *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989) (citing *Bobb v. Mod. Prods., Inc.*, 648 F.2d 1051, 1057 (5th Cir. 1981)).

[67] *Id.* (citing *Perry*, 528 F.2d at 1380).

[68] *Brister v. A.W.I., Inc.*, 946 F.2d 350, 354 (5th Cir. 1991).

[69] *Id.*

[70] *Id.* (citing *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982)).

[71] *Jones v. United States*, 936 F. 3d 318, 322 (5th Cir. 2019) (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508 (1957)) (quotation marks omitted).

[72] *Id.* at 323 (citing *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997)) (alteration and quotation marks omitted).

[73] 946 F.2d 350, 354.

10

was about to occur.[74] Defendant further argues that Plaintiff's coworker, Morgan, was uninjured after the bump and that, ultimately, Plaintiff's injuries were due to his own carelessness in preparing himself for the bump.[75] But on the other hand, Plaintiff claims that Defendant failed to properly follow its own protocol by failing to announce "watch the bump."[76] This is supported by Morgan's testimony in his deposition, where he admits he did not announce the bump and he did not think any other workers called out for the bump.[77] Additionally, Plaintiff claims the bump that occurred on June 5, 2020 leading to Plaintiff's injuries was harder than normal as a result of Captain Landry "coming in too hot."[78] This, again, is supported by Morgan's testimony in his deposition where he asserts the bump was "harder than normal" and Captain Landry had a habit of being "fast paced" with bumps.[79] Riggins makes similar assertions in his affidavit.[80] Therefore, there are genuine issues of material fact in dispute regarding whether negligence of Defendant's employees caused Plaintiff's injuries. Thus, summary judgment is improper on the issue of Plaintiff's Jones Act negligence claim.

---

[74] Rec. Doc. 21-1 at 11.

[75] *Id.*

[76] *Id.* at 16.

[77] Rec. Doc. 24-4 at 25-6.

[78] Rec. Doc. 24 at 16.

[79] Rec. Doc. 24-4 at 24.

[80] *See* Rec. Doc. 24-7.

### B.   Unseaworthiness Claim under General Maritime Law

"General maritime law imposes a duty upon shipowners to provide a seaworthy vessel."[81] An unseaworthiness claim is "based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea."[82] Unlike a Jones Act negligence claim, unseaworthiness does not require notice.[83] "A vessel is unseaworthy only if it presents an unreasonable risk of harm to the seaman."[84] The owner is not "obligated to furnish an accident-free ship."[85] Rather, seaworthiness requires only that "a vessel and its appurtenances must be reasonably suited for the purpose or use for which they were intended."[86] Furthermore, the duty to maintain a seaworthy vessel "is absolute and completely independent of [the] duty under the Jones Act to exercise reasonable care."[87] Thus, "how [an unseaworthy] condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it."[88]

To succeed on an unseaworthiness claim, the plaintiff must also establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy.[89] The

---

[81] *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020) (quoting *Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 74 (5th Cir. 1980)).

[82] *Gowdy v. Marine Spill Response Corp.*, 925 F.3d 200, 205 (5th Cir. 2019) (quoting *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 570 (5th Cir. 2012)).

[83] *Luwisch*, 956 F.3d at 328 n.1; *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960) ("[T]he shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability.").

[84] *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007) (internal citations omitted).

[85] *Id.* (quoting *Mitchell*, 362 U.S. at 550).

[86] *Id.* (quoting *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347 (5th Cir. 1988)).

[87] *Id.*

[88] *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971).

[89] *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001) (citing *Caldwell v. Manhattan Tankers Corp.*, 618 F.2d 361, 363 (5th Cir. 1980)).

standard of causation for an unseaworthiness claim is more demanding than for a Jones Act negligence claim and requires proof of proximate cause.[90] The plaintiff must prove "that the unseaworthy condition played a substantial part in bringing about or actually causing [an] injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."[91]

Defendant argues that, at best, Plaintiff's allegations reflect an isolated incident of operational negligence by Captain Landry in coming in too fast during the tow building process.[92] Plaintiff asserts the crew of the M/V ST. PEREGRINE was "unfit, ill-trained, and engaged in unsafe work methods" and that the event on June 5, 2020 was not just an isolated incident.[93] Plaintiff claims Captain Landry overworked deckhands and frequently took risks by doing dangerous maneuvers.[94] These claims are supported by Riggins' affidavit.[95] Captain Landry's own testimony supports the fact that Morgan, one of the deckhands on the vessel that day and leading up to the incident, was "insubordinate" and did not follow directions.[96] Accordingly, there is a genuine dispute of material fact on the issue of whether the M/V ST. PEREGRINE's crew rendered it unseaworthy. Thus, summary judgment on the issue of unseaworthiness is improper as well.

---

[90] *Gowdy*, 925 F.3d at 208–09.

[91] *Luwisch*, 956 F.3d at 326 (quoting *Offshore Express*, 845 F.2d at 1354).

[92] Rec. Doc. 21-1.

[93] Rec. Doc. 24 at 19.

[94] *Id.*

[95] *See* Rec. Doc. 24-7.

[96] *See* Rec. Doc. 24-6 at 30-1.

### V. Conclusion

Based on the foregoing, there are genuine issues of material fact in dispute precluding summary judgment on the Jones Act negligence claim and the unseaworthiness claim. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment[97] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___22nd___ day of August, 2024.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[97] Rec. Doc. 21.