UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KYLE ELLISON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1849** |
| **MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC** | **SECTION: "G"(3)** |

## ORDER AND REASONS

In this litigation, Plaintiff Kyle Ellison ("Plaintiff") brings claims against Defendant Marquette Transportation Company Gulf-Inland, LLC ("Defendant") under the Jones Act and general maritime law.[1] Plaintiff alleges that Plaintiff was a member of the M/V ST. PEREGRINE's crew when a collision occurred between two barges while the M/V ST. PEREGRINE was building tow.[2] As a result of this collision, Plaintiff alleges he suffered injuries to his left leg and lower back.[3] Pending before the Court is Defendant's Motion for Partial Summary Judgment on the issue of whether Defendant can properly be assessed punitive damages for delaying maintenance and cure payments.[4] Plaintiff opposes the motion.[5] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 1.

[2] *See, e.g.,* Rec. Doc. 24 at 1.

[3] *Id.*

[4] Rec. Doc. 22.

[5] Rec. Doc. 23.

1

## I. Background

Plaintiff avers that he was a deckhand and member of the crew of the M/V ST. PEREGRINE when a collision occurred while the M/V ST. PEREGRINE building tow on June 5, 2020.[6] Plaintiff claims they injured their left leg and lower back in the collision.[7] On June 5, 2020, the M/V ST. PEREGRINE was captained by Captain Landry who operated the vessel with deckhands Brandon Morgan ("Morgan") and Plaintiff Kyle Ellison.[8] Harvey Marbile was the port captain.[9]

On July 9, 2024, Defendant filed the instant motion for partial summary judgment on punitive damages.[10] On July 16, 2024, Plaintiff opposed the motion.[11] On July 19, 2024, Defendant filed a reply brief.[12]

## II. Parties' Arguments

### A. Defendants' Arguments in Support of the Motion for Partial Summary Judgment on Punitive Damages

Defendant argues there is no evidence it acted "in bad faith or engaged in egregious misconduct with respect to Plaintiff and his claims."[13] Defendant admits that a Jones Act employer owes a duty to provide maintenance and cure to any employee that is injured or becomes ill while

---

[6] Rec. Doc. 24 at 1.

[7] *Id.*

[8] *Id.* at 6.

[9] *Id.*

[10] Rec. Doc. 22.

[11] Rec. Doc. 23.

[12] Rec. Doc. 31.

[13] Rec. Doc. 22-1 at 17.

working on a company vessel.[14] But Defendant claims Jones Act employers are not required to immediately commence payments.[15] It submits that employers are first permitted to investigate claims for maintenance and cure before beginning payments, and that performing an investigation does not open employers to liability for compensatory or punitive damages.[16] As Defendant notes, under *Atlantic Sounding Co. v. Townsend*,[17] an employee may seek punitive damages if an employer arbitrarily and willfully refuses to pay maintenance and cure.[18] Defendant claims Plaintiff can point to no evidence demonstrating it arbitrarily, willfully, or in bad faith failed to pay maintenance and cure with respect to Plaintiff's claims.[19]

Specifically, Defendant points to the fact that Plaintiff "never reported an acute injury from a barge collision" to Defendant.[20] Defendant argues when it was first informed by Plaintiff that the injury occurred on the boat it immediately began investigating the matter.[21] Defendant reviewed text message exchanges between Plaintiff and the Crew Manager, Corey Sayers, where Plaintiff claimed the injury was "done at my house."[22] After later being informed Plaintiff injured himself on the boat, Defendant claims the investigation that ensued was the first time they were

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009).

[18] Rec. Doc. 22-1 at 17–18.

[19] *Id.* at 20.

[20] *Id.* at 8.

[21] *Id.*

[22] *Id.*

made privy to Plaintiff's medical records from the injury.[23] After Defendant and their board-certified physician reviewed the records, Defendant determined the records made no mention of an acute injury on a vessel.[24] Due to this fact and the fact Plaintiff allegedly never directly reported a specific incident to Defendant, Defendant denied Plaintiff's claim for maintenance and cure.[25]

In December of 2022, Defendant admits it received a second demand for maintenance and cure from Plaintiff.[26] On June 2, 2023, Plaintiff filed the instant lawsuit against Defendant.[27] On December 14, 2023, Defendant claims, after receiving more medical records and discovery from Plaintiff, it informed Plaintiff that none of the medical records made a mention of an incident or a barge collision occurring on June 5, 2020.[28] Defendant continued with the investigation, interviewing Plaintiff, one of Plaintiff's initial medical providers, Dr. James Lalonde, and Captain Landry.[29] Defendant then attempted to mediate with Plaintiff with a meeting occurring on June 4, 2024, but with no resolution.[30] After completing these steps, Defendant then agreed to pay maintenance and cure for Plaintiff's leg injury in the amount of $28,485, representing a rate of $45 a day from June 5, 2020 until March 2, 2022.[31] Defendant denied Plaintiff's claims for

---

[23] *Id*. at 10.

[24] *Id*.

[25] *Id*.

[26] *Id*. at 11.

[27] *Id*.

[28] *Id*. at 12.

[29] *Id*.

[30] *Id*. at 13.

[31] *Id*.

maintenance and cure for Plaintiff's alleged lower back issues based on the fact Plaintiff made no complaints about lower back pain to medical providers and Dr. Katz, Defendant's board-certified orthopedic surgeon hired to examine Plaintiff, reported that Plaintiff's lower back injuries did not relate to the June 5, 2020 incident.[32]

### B.     *Plaintiff's Arguments in Opposition to the Motion for Summary Judgment*

In Opposition,[33] Plaintiff argues, in keeping with the "absolute nature of the right" to maintenance and cure, a plaintiff need only establish that he was injured or became ill while serving on a vessel.[34] Plaintiff concedes when an employee demands maintenance and cure the "employer is not obliged to immediately begin payments; rather, it may conduct a reasonable investigation of the claim and require corroboration without subjecting itself to compensatory or punitive damages."[35] Plaintiff further admits the willful and wanton conduct necessary to justify an award of punitive damages requires an element of bad faith.[36]

Plaintiff argues multiple witnesses interviewed by Defendant, including Captain Landry and Corey Sayers, confirm Plaintiff was injured and unable to work in his normal capacity the days following June 5, 2020.[37] Plaintiff maintains Defendant "unquestionably" knew that Plaintiff's leg started swelling after working on June 5, 2020 as confirmed by Captain Landry and

---

[32] *Id.*

[33] Rec. Doc. 23.

[34] *Id.* at 17.

[35] *Id.*

[36] *Id.* at 18.

[37] *Id.* at 19.

5

Corey Sayers in their July 24, 2020 interviews.[38] Plaintiff alleges, regardless of the text sent on Plaintiff's phone to Corey Sayers about the injury occurring at home, Defendant knew Plaintiff was injured after working on June 5, 2020.[39] Plaintiff submits the text from Plaintiff claiming the injury occurred at home was only sent after "Sayers made veiled threats against [Plaintiff's] job, and had instructed Plaintiff to send this text."[40] Plaintiff also mentions the "Lump Sum Payment Agreement" sent by Defendant to Plaintiff on August 4, 2020 which, Plaintiff claims, stated that Plaintiff told Defendant about his injury on June 5, 2020 on the M/V ST. PEREGRINE.[41]

Plaintiff disagrees with Defendant's characterization of Plaintiff's medical records, claiming the records demonstrate that every provider references his job with Defendant in relation to his injuries.[42] Plaintiff further takes issue with the fact Defendant failed to interview Morgan, the lead deckhand on June 5, 2020 on the M/V ST. PEREGRINE, at the same time it interviewed Captain Landry and Corey Sayers.[43] Plaintiff points out Defendant waited nearly three-and-a-half years until interviewing Brandon Morgan.[44]

C.  *Defendant's Arguments in Reply*

Defendant replies by arguing, even assuming all of Plaintiff's allegations are true, the evidence does not demonstrate Defendant's conduct rises to the level of a "monstrous wrong" or

---

[38] *Id.*

[39] *Id.*

[40] *Id.* at 21.

[41] *Id.* at 13.

[42] *Id.*

[43] *Id.* at 22.

[44] *Id.*

6

the "willful, wanton, [or] bad faith conduct" necessary to support punitive damages.[45] Defendant paints Plaintiff's contention that Plaintiff's wife sent Corey Sayers the text about the injury occurring at home as irrelevant, arguing the text was considered by Defendant in its investigation of Plaintiff's injury and Defendant had no reason to believe at the time it was sent by Plaintiff's wife.[46] Defendant further argues the medical records demonstrated to Defendant that Plaintiff's injuries were the result of a chronic condition unrelated to Plaintiff's job due to their silence on a "barge collision" causing any of the symptoms.[47] Defendant refutes Plaintiff's contention that it denied Plaintiff's claim due to Plaintiff refusing to accept the Lump Sum Agreement.[48]

Defendant defends its decision not to initially interview Brandon Morgan, stating that Defendant performed its investigation based on the information Plaintiff provided to it.[49] Defendant claims Plaintiff never mentioned a barge collision to them, and so Defendant found it unnecessary to interview Brandon Morgan about any accident.[50]

Defendant further argues much of Plaintiff's Opposition contains inadmissible hearsay statements that should not be considered by this Court.[51] Defendant sums up its argument by asserting it investigated the injury based on Plaintiff's allegations at the time,[52] and while the denial

---

[45] Rec. Doc. 31 at 1.

[46] *See id.* at 2.

[47] *Id.* at 3.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* at 4.

[52] *Id.* at 5.

7

of maintenance and cure may ultimately have been wrong, Defendant avows it was not unreasonable in denying or delaying maintenance and cure based on Plaintiff's statements at the time.[53]

### III. Legal Standard

*A.     Summary Judgment Standard*

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[54] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[55] All reasonable inferences are drawn in favor of the nonmoving party.[56] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[57] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[58] The nonmoving party may not rest upon the pleadings.[59] Instead, the nonmoving

---

[53] *Id.* at 6.

[54] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[55] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[56] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000))

[57] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[58] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[59] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[60]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[61] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[62] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[63] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[64]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory

---

[60] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[61] *Celotex*, 477 U.S. at 323.

[62] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[63] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[64] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[65] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[66]

### B.     *Maintenance and Cure and Punitive Damages Standard*

"Maintenance is a per diem living allowance for food and lodging comparable to what the seaman is entitled to while at sea; cure is payment of medical expenses incurred in treating the seaman's injury or illness."[67] A seaman's right to maintenance and cure lives in the contractual relationship between the seaman and the employer.[68] It is designed to guarantee recovery to seaman who experience injury or sickness in the service of a vessel.[69] Maintenance and cure is a "right" to seaman who are injured in the course of their duties to a vessel.[70] Plaintiff can recover maintenance and cure by proving the following: (1) his engagement as a seaman, (2) his illness or injury and that it occurred, was aggravated by, or manifested itself while in service to the vessel, (3) the wages to which he may be entitled to the end of the voyage, and (4) the expenditures or liability incurred for medical costs, care, board, and lodging.[71]

Upon receiving a demand for maintenance and cure, a shipowner is not required to begin payments immediately, but may undertake a reasonable investigation to corroborate the seaman's claim.[72] "If, after investigating, the shipowner unreasonably rejects the claim, when in fact the

---

[65] *Little*, 37 F.3d at 1075 (internal citations omitted).

[66] *Morris*, 144 F.3d at 380.

[67] *Weeks Marine, Inc. v. Watson,* 190 F. Supp. 3d 588, 596 (E.D. La. 2016).

[68] *Pelotto v. L & N Towing Co.,* 604 F.2d 396, 400 (5th Cir. 1979).

[69] *Id.*

[70] *Fostrer v. Brian's Transp. Serv.,* No. CIV. A. 91-4421, 1993 WL 114528, at *2 (E.D. La. Apr. 8, 1993).

[71] *Id.* (citing Martin Norris, 2 *The Law of Seamen* § 26.21, at 53 (Supp. 1992)).

[72] *Lodrigue v. Delta Towing, L.L.C.,* No. CIV.A.03-0363, 2003 WL 22999425, at *11 (E.D. La. Dec. 19,

seaman is due maintenance and cure, the owner becomes liable not only for the maintenance and cure payments, but also for compensatory damages."[73] But there is an "escalating scale of liability."[74] "If the owner not only lacks a reasonable defense" for failing to pay maintenance and cure, "but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well."[75]

## IV. Analysis

In this case, Plaintiff asserts that there is a genuine dispute of material fact on whether Defendant should be assessed punitive damages for their delay in paying maintenance and cure to Plaintiff.[76] A plaintiff is entitled to maintenance and cure if he establishes: (1) his engagement as a seaman, (2) his illness or injury and that it occurred, was aggravated by, or manifested itself while in service to the vessel, (3) the wages to which he may be entitled to the end of the voyage, and (4) the expenditures or liability incurred for medical costs, care, board, and lodging.[77] In this case, at issue is prong two, whether Plaintiff was injured or aggravated an injury on the M/V ST. PEREGRINE. Defendant claims Plaintiff "never reported any barge collision or specific acute accident," and so denying maintenance and cure was justified.[78]

---

2003).

[73] *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987).

[74] *Id.*

[75] *Id.*

[76] *See* Rec. Doc. 23 at 16.

[77] *Fostrer*, 1993 WL 114528 at *2.

[78] Rec. Doc. 22-1 at 10.

If an injury occurs, manifests itself, or is even aggravated by working on a vessel, Plaintiff is owed maintenance and cure.[79] Here, there is a genuine dispute of material fact on whether Plaintiff's injury fits this criterion. Defendant's board-certified physician stated he does not believe Plaintiff's condition was caused or aggravated by his work on the boat.[80] However, an employee of Defendant's summary of the incident states that Plaintiff notified the "master of the ST PEREGRINE of having a swollen leg and moderate pain late in the evening of 06/05/20," and that his "leg started swelling after several hours of work."[81] Defendant's own Claims and Risk Manager Ronnie Dupuy stated in an email "[Plaintiff] has always alleged that his leg issues were caused by prolonged standing on the deck."[82]

While Defendant points to some medical records that do not mention work as a cause or aggravation of Plaintiff's injury, one such record produced by Dr. Olinde only two weeks after the alleged June 5, 2020 barge bump indicates that Plaintiff stated swelling "oftentimes will follow his left foot when he works on the River."[83] While Defendant claims it did not receive Dr. Lalonde's July 2, 2020 intake form in the initial investigation, it too cited wires constantly dropping on Plaintiff's feet as the cause of injury.[84]

Thus, there exists adequate evidence for a reasonable factfinder to find Plaintiff demonstrated to Defendant his injury was caused or at least aggravated by his work on the M/V

---

[79] *Fostrer*, 1993 WL 114528 at *2.

[80] Rec. Doc. 22-3 at 22.

[81] *Id.* at 18.

[82] *Id.* at 21.

[83] Rec. Doc. 22-1 at 6.

[84] *Id.* at 7.

ST. PEREGRINE. With these facts, a reasonable factfinder could further find that Defendant exhibited callous, arbitrary, and bad faith behavior in refusing to pay maintenance and cure for over two years after these records and emails were produced. Accordingly, a genuine dispute of material fact exists on the issue of whether punitive damages are proper and the Court, as trier of fact, must weigh the evidence presented at trial.

## V. Conclusion

Based on the foregoing, there are genuine issues of material fact in dispute precluding summary judgment on the punitive damages. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment[85] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 11th day of September, 2024.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[85] Rec. Doc. 22.

13